**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHARLES ZISA,

*Plaintiff*,

v.

JOHN HAVILAND, et al.,

*Defendants*.

Civil Action No. 17-5551

**OPINION**

**John Michael Vazquez, U.S.D.J.**

Pending before the Court are five partial motions to dismiss Plaintiff's Second Amended

Complaint ("SAC"). The five groups of Defendants who have filed the motions are (1) Defendants

Eric Arosemowicz and Bergen County Sheriff's Officers ("BCSO") John Does 21-25[1] (D.E. 137);

(2) Defendants City of Hackensack ("Hackensack"), Stephen LoIacono, and Thomas Padilla (D.E.

138); (3) Defendants John Haviland, Timothy Condon, and Zaida Molina, all of the Bergen County

Prosecutor's Office ("BCPO") (the "Individual BCPO Defendants") (D.E. 139); (4) Defendants

Laura Campos and Anthony Ferraioli (D.E. 140); and (5) Defendant Joseph Al-Ayoubi (D.E. 141).

Plaintiff filed a single consolidated brief in opposition, D.E. 164, to which all Defendants replied,

D.E. 168-72.[2] The Court reviewed the submissions made in support and in opposition of the

---

[1] Although named as Defendants in Plaintiff's original complaint, the SAC does not name Bergen County Sheriff's Officers John Does 21-25 as Defendants. Consequently, there are presently no claims to dismiss as to these Defendants and any arguments to this effect are moot.

[2] Defendant Eric Arosemowicz's brief in support of his motion to dismiss (D.E. 137-1) is referred to as "Arosemowicz Br."; Hackensack, LoIacono, and Padilla's brief in support of their motion to dismiss (D.E. 138-1) is referred to as "Hackensack Br."; Haviland, Condon, and Molina's brief in

motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).

For the reasons that follow, the motions to dismiss are **GRANTED in part** and **DENIED in part**. As to counts that are being dismissed without prejudice, the Court is not granting leave to file a third amended complaint at this time. Instead, if during the course of discovery, Plaintiff believes that he has sufficient information on which to make plausible allegations, Plaintiff may make a motion to amend at that time.

## I.     FACTUAL AND PROCEDURAL HISTORY

This matter involves alleged civil rights violations that occurred during the investigation and prosecution of Plaintiff. The investigation and prosecution related to Plaintiff's role in two incidents, an altercation in 2004 involving juveniles (the "2004 Altercation") and a car accident in 2008 (the "2008 Car Accident"). Plaintiff, the former Chief of the Hackensack Police Department, was prosecuted as a result of his alleged involvement in both incidents. Plaintiff was ultimately successful in the criminal matter following a trial, appeal, and remand. For purposes of the pending motion, the Court does not retrace this case's full factual and procedural history. The Court instead incorporates by reference the detailed background in its October 19, 2019 Opinion and Order ("October 19 Opinion") that partially dismissed Plaintiff's First Amended Complaint (the "FAC"). D.E. 77, 78.

The following are the only claims that survived Defendants' first motions to dismiss: Zisa's claims for the denial of fair trial (Counts One and Two) as to Arosemowicz and the Individual Hackensack Police Department ("HPD") Defendants; fabrication of evidence (Counts Eight and

---

support of their motion to dismiss (D.E. 139-2) is referred to as "BCPO Def. Br."; and Campos and Ferraioli's brief in support of their motion to dismiss (D.E. 140-2) is referred to as "Campos Br.". Plaintiff's combined brief in opposition (D.E. 164) will be referred to as "Plf. Opp."

Nine) as to Arosemowicz and the Individual HPD Defendants; and malicious prosecution (Counts Three through Five) with respect to the 2004 Altercation charges only and only as to the Individual HPD Defendants and the Individual BCPO Defendants in their individual (rather than official) capacities. The Court also determined in the October 19 Opinion, that the FAC did not clearly delineate whether certain conduct of the Individual BCPO Defendants was prosecutorial or investigative. Accordingly, the Court granted Plaintiff leave to clarify his allegations in order to determine whether prosecutorial immunity applied to certain BCPO Defendants. Finally, the Court dismissed certain of Plaintiff's claims without prejudice and granted Plaintiff leave to file an amended pleading solely as to those claims.[3]

On July 17, 2019, Plaintiff filed the SAC. Plaintiff asserts the following counts in the SAC: denial of a fair trial under 42 U.S.C. § 1983 as to the 2008 Car Accident (Count One)[4]; denial of a fair trial under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.*, as to the 2008 Car Accident (Count Two); malicious prosecution and conspiracy to commit malicious prosecution under § 1983 as to all charges except the 2008 Official Misconduct charge and as to all Defendants except Arosemowicz (Count Three); malicious prosecution and conspiracy to commit malicious prosecution under the NJCRA as to all charges except the 2008 Official Misconduct charge and as to all Defendants except Arosemowicz (Count Four); common law malicious prosecution and conspiracy to commit malicious prosecution as to all charges except the 2008 Official Misconduct charge and as to all Defendants except Arosemowicz (Count Five); failure to supervise/intervene under § 1983 against LoIacono, Padilla, Haviland, Condon, and

---

[3] On November 2, 2018, Plaintiff filed a motion seeking reconsideration of five issues that were addressed in the October 19 Opinion. D.E. 81. Plaintiff's motion was denied because Plaintiff did not establish adequate grounds for reconsideration. D.E. 116.

[4] Each count is asserted against all Defendants unless otherwise noted.

Hackensack (Count Six); failure to supervise/intervene under the NJCRA against LoIacono, Padilla, Haviland, Condon, and Hackensack (Count Seven); fabrication of evidence under § 1983 (Count Eight); fabrication of evidence under the NJCRA (Count Nine); conspiracy under § 1983 (Count Twelve)[5]; conspiracy under the NJCRA (Count Thirteen); municipal liability under § 1983 against Hackensack (Count Fourteen); municipal liability under the NJCRA against Hackensack (Count Fifteen); and common law aiding and abetting (Count Sixteen). Defendants filed the instant motions to dismiss on August 28, 2019 seeking to dismiss certain aspects of the SAC pursuant to Rule 12(b)(6). D.E. 137-141.

## II.    <u>LEGAL STANDARDS</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

---

[5] The SAC does not include a Count Ten or Eleven.

*Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III. LAW & ANALYSIS

Haviland, Condon, and Molina, the Individual BCPO Defendants, all argue that they are immune for the alleged misconduct because of prosecutorial and qualified immunity.

### 1. Prosecutorial Immunity

Prosecutors have absolute immunity from civil liability for conduct in their role as prosecutors. With respect to § 1983 claims, prosecutorial immunity applies when the "prosecutor's conduct is 'intimately associated with the judicial phase of the criminal process.'"[6] *Newsome v. City of Newark*, No. 13-6234, 2014 WL 4798783, at *2 (D.N.J. Sept. 25, 2014) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). A defendant prosecutor must establish that "he or she was functioning as the state's advocate when performing the action(s) in question," such that the actions were "in a judicial or 'quasi-judicial' capacity." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). In addition, prosecutorial immunity is not limited solely to attorneys; employees of prosecutors are also entitled to immunity "when the employee's function is closely allied to the

---

[6] To be clear, this discussion of prosecutorial immunity only pertains to Plaintiff's § 1983 claims. As discussed in the October 19 Opinion, "[p]rosecutorial immunity is not absolute under New Jersey law," and the Court already determined that, as pled, the BCPO Defendants are not immune for the New Jersey state law claims. Oct. 19 Opinion at 31.

judicial process." *Davis v. Grusemeyer*, 996 F.2d 617, 631 (3d Cir. 1993). Prosecutorial immunity, however, "does not apply where the prosecutor's actions serve a purely investigative function." *Newsome*, 2014 WL4798783, at *2.

"To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, [a court] must take into account the 'functional' considerations." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009). This is a fact-based analysis; a court must "ascertain just what conduct forms the basis for the plaintiff's cause of action" and then, must "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011).

The Third Circuit has provided guideposts to assist courts in determining whether conduct is prosecutorial or investigative. First, timing may be instructive as "the period during which prosecutors are most likely functioning in a 'quasi-judicial' capacity is the time between indictment and dismissal, acquittal, or conviction." *Odd*, 538 F.3d at 211. Next, prosecutorial activities may include conduct that involves preparing for a case and "obtaining, reviewing, and [evaluating] evidence." *Newsome*, 2014 WL 4798783, at *3. This may include soliciting testimony from grand jury witnesses and conducting interviews to generate evidence to be presented to the grand jury. *Kulwicki v. Dawson*, 969 F.2d 1454,1465 (3d Cir. 1992). Finally, "decisions regarding how to proceed with a prosecution serve a prosecutorial, rather than administrative function and thus warrant absolute immunity." *Newsome*, 2014 WL 4798783, at *3. Specifically, "the decision whether to bring a criminal suit" falls "squarely within a prosecutor's absolute immunity," as does the decision of whether to continue a prosecution through to trial. *Davis v. Grusemeyer*, 996 F.2d 617, 629 (3d Cir. 1993).

In the October 19 Opinion, this Court determined that Haviland was not entitled to prosecutorial immunity with respect to the allegations that he instructed staff to destroy their notes.[7] Oct. 19 Opinion at 30-31. As for the remaining allegations, the Court concluded that the FAC did not draw a clear distinction between investigative and prosecutorial conduct. Accordingly, the Court could not determine whether any other alleged conduct by the BCPO Defendants was subject to prosecutorial immunity. *Id.* at 30. Now, Haviland, Condon, and Molina argue that the SAC still fails to clarify that certain actions were actually investigative. "Instead, Plaintiff merely repeated the same allegations previously made and labeled the conduct as 'investigative.'" BCPO Defs. Br. at 11. Plaintiff counters that Haviland, Condon, and Molina are not entitled to prosecutorial immunity because the investigation was wrongfully initiated based on an animus against Zisa. Plf. Opp. at 24. But as previously discussed in the October 19 Opinion, personal considerations that may have influenced a decision as to how to proceed are not relevant. *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992) (finding that prosecutor was immune from suit alleging that case was brought due to personal animus).

Zisa also contends that the SAC clearly delineates between investigative and prosecutorial misconduct. *Id.* at 26. The Court agrees in part. As the BCPO Defendants argue, there are numerous instances in the SAC where Plaintiff simply added the word "investigative" or "investigate." For example, when describing Haviland and Condon's decision to dismiss Al-Ayoubi's criminal charges, Plaintiff states that the conduct was part of the "Zisa investigation." *See, e.g.*, SAC ¶ 95 (explaining that information that Condon received from an attorney about Al-Ayoubi's steroid use might compromise the "Zisa investigation"). When Condon received this

---

[7] This determination – that Haviland was not entitled to prosecutorial immunity as to the destroyed notes – stands and is not revisited here.

information, however, Zisa was already indicted and the information was relevant to Al-Ayoubi's credibility as a witness in the Zisa prosecution.[8]  Courts must "look beyond the labels" when determining whether conduct is part of the prosecutor's "core prosecutorial function."  *Peterson v. Bernardi*, 719 F. Supp. 2d 419, 433 (D.N.J. 2010).  Evaluating evidence used to present a case falls squarely within the confines of prosecutorial conduct.  *See Newsome*, 2014 WL 4798783, at *2 ("This immunity encompasses decisions to continue a prosecution in light of conflicting evidence, specifically questionable witness testimony.").  Consequently, the above example, and the vast majority of the alleged misconduct of Haviland, Condon, and Molina, is prosecutorial despite Plaintiff's use of the label investigation or investigative.

But there is one exception -- Haviland's directions to open an internal affairs investigation as to Campos in June 2010.  Plaintiff alleges that after learning that Campos's earlier sworn statement conflicted with facts alleged in her civil lawsuit against Zisa, Haviland directed the HPD to open an internal affairs investigation into Campos.  SAC ¶ 184.  Directing others to open an internal affairs investigation does not align with the traditional role of a prosecutor, even though it occurred after Zisa was indicted.  In fact, it is a job that is traditionally performed by police officers.  Haviland, therefore, is not entitled to prosecutorial immunity with respect to this conduct.  *See Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 1298300, at *9 (D.N.J. Mar. 31, 2014) (concluding that "allegations of directing an ongoing investigation are sufficient to remove [the

---

[8] Plaintiff also argues that when this occurred the BCPO Defendants were acting under a memorandum of understanding ("MOU"), as a result they were not acting within their prosecutorial capacity.  Plf. Opp. at 31.  The Court already determined that conduct that occurred as a result of the MOU did not amount to administrative work because it was directly related to the BCPO's investigation and prosecution of Plaintiff.  Oct. 19 Opinion at 25.  Accordingly, in light of the relevant factual allegations, the MOU does not automatically convert traditional prosecutorial functions into administrative acts.

prosecutor's] conduct before Plaintiff was charged with a crime from the protections of absolute immunity").

Plaintiff also contends that Haviland's conduct throughout the Campos internal affairs investigation is not subject to immunity because through the investigation, Haviland obtained false statements from Campos that helped the Zisa investigation. SAC ¶¶ 187-95. Prosecutorial immunity would not apply if Haviland conspired or intended to obtain false testimony from Campos. *See Walker v. Clearfield Cty. Dist. Att'y*, 413 F. App'x 481, 483 (3d Cir. 2011) (concluding that prosecutor was not immune to allegations that he manufactured evidence to establish probable cause). But it is not clear when Haviland knew that Campos was giving false testimony. SAC ¶ 216 (alleging that Haviland knew Campos's allegations as to Zisa were fabricated by, "at latest, August 11, 2011"). The Supreme Court has directed lower courts to apply prosecutorial immunity sparingly such that there is a "presumption that qualified rather than absolute immunity is appropriate." *Odd*, 538 F.3d at 208. Thus, the Court concludes that Haviland is not entitled to absolute prosecutorial immunity at this time. Given the uncertainty as to whether Haviland knew he was eliciting false testimony, the Court does not conclude that Haviland is absolutely immune for his conduct with respect to the Campos internal affairs investigation. Of course, this determination is made as to the SAC's allegations; the Court may need to revisit the issue following discovery if different facts come to light.

In sum, Condon and Molina are afforded prosecutorial immunity for their alleged wrongdoing, and Haviland is entitled to prosecutorial immunity for his conduct except for his involvement in the Campos internal affairs investigation.

## 2. Qualified Immunity

In the October 19 Opinion, this Court determined that "[t]o the extent that the BCPO Officers are not absolutely immune as a result of prosecutorial immunity, the remaining claims asserted against them are barred as a result of qualified immunity in light of the allegations as pled." Oct. 19 Opinion at 32. Plaintiff repeats his argument that the BCPO Defendants' conduct is not protected by qualified immunity.[9] Plf. Opp. at 6-24. As in the first motion to dismiss, the parties focus on Haviland's instructions to destroy notes and the failure to disclose immunity agreements. Accordingly, the Court also focuses on this conduct.

Qualified immunity can shield a municipal officer from liability in a § 1983 case. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). Qualified immunity under the NJCRA "tracks the federal standard." *Brown v. State*, 230 N.J. 84, 98 (2017) ("To ascertain whether a governmental official . . . is entitled to qualified immunity requires inquiries into whether: (1) the facts, taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right; and (2) that constitutional right was clearly established at the time that defendant acted.") (quotations, citations, and brackets omitted). Accordingly, the Court considers qualified immunity for Plaintiff's § 1983 and NJCRA claims together.

---

[9] Plaintiff again argues that it is "premature" to decide whether any Defendant is entitled to qualified immunity, and that qualified immunity should only be decided with a complete factual record. Plf. Opp. at 6. The Court is dismayed that Plaintiff continues to make arguments that Court has expressly considered, ruled on, and rejected. Again, "the Supreme Court 'repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224 (1991)) (internal brackets omitted). Thus, courts can resolve the question of qualified immunity at the motion to dismiss stage. *See, e.g.*, *Laniado v. County of Ocean*, No. 18-1513, 2019 WL 3451705, at *5 (D.N.J. July 31, 2019) (granting Rule 12(b)(6) motion to dismiss as to certain defendants because of qualified immunity).

"Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014). A court must engage in the following two-part inquiry to determine whether qualified immunity applies: (1) whether the allegations, reviewed in a light most favorable to the party asserting the injury, show that defendant's conduct violated a constitutional right, and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have the discretion to consider either prong of the two-part analysis first. *Id*. at 236. The United States Supreme Court has ruled that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "To make that determination, [a court should] engage in another reasonableness inquiry: 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Santini v. Fuentes*, 795 F.3d 410, 417-18 (3d Cir. 2015) (quoting *Saucier*, 533 U.S. at 202). This analysis is "undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201.

The BCPO Defendants argue that Haviland is entitled to qualified immunity because Zisa does not allege a *Brady* violation. BCPO Def. Br. at 6-7. In *Brady v. Maryland*, the Supreme Court concluded that pursuant to the Due Process Clause of the Fourteenth Amendment, prosecutors must disclose exculpatory evidence that is material to a defendant's guilt or punishment. 373 U.S. 83, 87 (1963). The requirements of *Brady* have been extended to state actors. *See, e.g.*, *Kaplan v. Holder*, No. 14-1740, 2015 WL 1268203, at *4 (D.N.J. Mar. 18, 2015).

Moreover, *Brady* represents a clearly established constitutional right. *See, e.g.*, *Munchinski v. Solomon*, 747 F. App'x 52, 61 (3d Cir. 2018).

In the SAC, Zisa alleges that the notes destroyed by Haviland "are believed to have contained exculpatory *Brady* material." SAC ¶ 307. Zisa continues that the notes hindered his ability to confront and cross examine witnesses. *Id.* ¶ 308. Evidence is *Brady* material "if there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011) (quoting *Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009)). "A reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* Although Zisa does not know precisely what was destroyed, he argues that he is entitled to discovery to determine whether *Brady* evidence was in fact destroyed. Plf. Opp. at 21-22.

Citing to *United States v. Ramos*, 27 F.3d 65 (3d Cir. 1994), in the October 19 Opinion, this Court explained, assuming that it constituted a clearly established right, to establish that a constitutional wrong occurred, Zisa must raise "a colorable claim that the investigator's discarded rough notes contained evidence favorable to him and material to his claim of innocence or to the applicable punishment—and that such exculpatory evidence has not been included in any formal interview report provided to defendant." Oct. 19 Opinion at 37. The FAC, however, only speculated that the destroyed notes may have contained *Brady* material. *Id.*

The SAC includes additional allegations to support a colorable claim that Haviland destroyed *Brady* material that was not otherwise disclosed. The SAC pleads that after Zisa's counsel made a request for the preservation of relevant documents, Haviland walked through the office and instructed "everybody" to get rid of notes and e-mails "on the Zisa case." SAC ¶ 298. Moreover, Haviland's request to get rid of notes and documents was "peculiar." *Id.* ¶ 298. Finally,

the SAC explains that few documents were actually produced, and that no notes, for example, were ever produced from meetings with Wilks, Attorney T's investigator. *Id.* ¶ 306. The Court had anticipated that Zisa was going to make a colorable claim based on responses to his actual cross examination at trial. For example, a trial witness may have recalled that there were differences between the material turned over in discovery when compared to the information in the destroyed notes.

Nevertheless, reading the SAC in a light most favorable to Plaintiff, the Court concludes that Zisa makes a colorable claim that *Brady* material was not disclosed because of Haviland's destruction of materials. Zisa adequately points to the timing (on the heels of a defense request to preserve); the fact that Haviland's instructions were, at best, unusual; the limited number of documents that were produced; and the allegedly instrumental role played by Wilks. Plaintiff, therefore, sufficiently pleads that Haviland's conduct with respect to the destruction of materials constitutes a constitutional wrong.

Haviland does not address whether his alleged constitutional harm violated a clearly established right. "[T]he burden of pleading a qualified immunity defense rests with the defendant." *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006). Because Haviland fails to address the second prong, the Court cannot conclude that he is entitled to qualified immunity at this time. *See Rosenberg v. Vangelo*, 93 F. App'x 373, 378-79 (3d Cir. 2004) ("To the extent the Supervisory Defendants fail to address the issue [of whether a right was clearly established], therefore, their claim for qualified immunity fails *ipso facto*.").

Turning to the immunity deals, the BCPO Defendants maintain that they are also entitled to qualified immunity. BCPO Def. Br. at 7-8. In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court concluded that there is a due process violation if the prosecution failed to reveal

that a witness had been promised not to be prosecuted in exchange for giving testimony because such a promise is critical impeachment evidence. *Giglio*, 405 U.S. at 154-55. Like *Brady*, *Giglio* has been extended to state actors and is also a clearly established constitutional right. *See, e.g.*, *Kamienski v. Ford*, No. 11-3056, 2019 WL 4556817, at *18 (D.N.J. Sept. 17, 2019).

Plaintiff alleges that the BCPO Defendants failed to disclose "meaningful, detailed information" regarding the immunity deals, SAC ¶ 275; Plaintiff does not claim that the BCPO Defendants failed to disclose that the immunity deals existed. Plaintiff also alleges that during his trial he cross-examined witnesses about their immunity deals and that the witnesses testified about their understanding of the terms. *Id.* ¶¶ 270, 222. As discussed, a *Giglio* violation occurs when a defendant fails to disclose an immunity agreement. Because Plaintiff knew before his trial that the immunity agreements existed, he fails to adequately plead any violation of *Giglio*. Consequently, the BCPO Defendants are entitled to qualified immunity as to this alleged misconduct.

Thus, with the exception of Haviland's conduct with respect to the Campos internal investigation and his destruction of potential *Brady* material, the remaining claims asserted against the Individual BCPO Defendants are barred as a result of prosecutorial and qualified immunity. Accordingly, the claims against Condon and Molina are dismissed without prejudice.

### B. Section 1983 and the New Jersey Civil Rights Act

42 U.S.C. § 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

§ 1983 does not provide substantive rights; rather, § 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a claim under § 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

The NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2. The "NJCRA was modeled after § 1983, [and so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted). Therefore, the Court considers Plaintiff's § 1983 and NJCRA claims together.

### 1. *Monell* Liability (Counts Fourteen & Fifteen)

Hackensack argues that the SAC fails to plausibly plead *Monell* liability as to it because the SAC contains no allegations about a city policy, plan, or custom that relates to Plaintiff's prosecution. Hackensack Br. at 20-26. A municipality may be liable under Section 1983 "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). A policy exists "when a decision-maker with final authority issues an official proclamation, policy, or edict." *Noble v. City of Camden*, 112 F. Supp.

3d 208, 221 (D.N.J. 2015) (internal quotations and citations omitted). "[A] custom may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id*. (internal quotations and citations omitted). In addition, the Third Circuit recently clarified that a *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline. To plead such a claim, a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)). For claims involving police officers, the alleged failure can only serve as a basis for § 1983 liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

In the October 19 Opinion, the Court dismissed Plaintiff's *Monell* claim, in part, because Plaintiff failed to sufficiently plead that Hackensack acted with deliberate indifference. Plaintiff still fails to do so. Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Estate of Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)). In the SAC, Plaintiff again alleges that Hackensack failed to train and supervise the HPD officers, and that Padilla and LoIacono acted with deliberate indifference. SAC ¶¶ 528-30. Although the SAC includes new allegations as to certain incidents where the HPD demonstrated favoritism or a disregard to enforce laws, some of these incidents occurred after the Zisa prosecution, *see, e.g.*, SAC ¶¶ 369(a), (f), (g), or it is not clear when they occurred, *see, e.g.*, *id.* ¶¶ 369(d), (q). As a

result, the Court cannot ascertain whether there was a history of misconduct before the Zisa prosecution occurred. Moreover, the new allegations are factually distinct. Even if they did occur prior to the Zisa prosecution, viewing these incidents together would not alert HPD decisionmakers that they were likely to confront the situation that occurred here.[10]

Plaintiff argues in passing that a single incident may be sufficient to establish deliberate indifference. Plf. Opp. at 41. It is true that in some instances, "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n. 10 (1989)). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223-24 (quoting *Brown*, 520 U.S. at 409). Plaintiff has not alleged sufficient facts to demonstrate deliberate indifference based on his incident alone because he fails to plead facts demonstrating that the need for training was patently obvious. *Id.* at 223. Without allegations establishing that Hackensack acted with deliberate indifference, Plaintiff's *Monell* claims fail.

---

[10] Plaintiff also alleges that Hackensack and the HPD had a "standard operating procedure" or "custom" of selective enforcement and prosecution for personal or political reasons. SAC ¶ 368. Plaintiff clarifies that this "policy" was effectuated through the HPD's failure to train or supervise the HPD officers. *Id.* ¶ 530; *see also* Plf. Opp. at 36. The Court does not interpret Plaintiff's allegations to mean that HPD engaged in selective enforcement for political reasons when he was the head of the department – although his tenure would seemingly be the relevant time period, *i.e.* the period in which he was he chief and before he was charged. Moreover, even if Plaintiff's *Monell* claim was pled as true custom claim, rather than a failure to train claim, the incidents in the SAC are too factually distinct to adequately allege a custom.

## 2. Supervisory Liability (Counts Six & Seven)

Plaintiff also asserts § 1983 and NJCRA claims against LoIacono and Padilla, the Individual Hackensack Defendants in supervisory positions; Haviland, the remaining BCPO Defendant in a supervisory position; and Hackensack, for their failure to supervise or intervene. Plaintiff alleges that these Defendants "turned a blind eye" on the failures of several employees and "failed to hold them accountable for their misconduct." SAC ¶ 453.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Rather, a plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the constitution." *Id.* (quoting *Iqbal*, 556 U.S. at 676). "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). "Proximate causation is established where the supervisor gave directions that the supervisor knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights." *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation omitted). In other words,

> a plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice that the defendant failed to employ, he or she must also allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.

*Jankowski v. Lellock*, 649 F. App'x 184, 187 (3d Cir. 2016) (citation omitted).[11]

Plaintiff's supervisory liability claims as to Haviland were previously dismissed without prejudice because the Court could not delineate what Plaintiff contended was investigative as opposed to prosecutorial. Oct. 19 Opinion at 43-45. In this Opinion, the Court already determined that due to prosecutorial and qualified immunity, Plaintiff's supervisory liability claim as to Haviland can only be premised on his involvement in the Campos internal affairs investigation and his instructions to destroy notes, as the remainder of Haviland's allegedly wrongful conduct is protected by prosecutorial and qualified immunity. Based solely on the non-immune conduct and drawing all reasonable inferences in Plaintiff's favor, the SAC states a claim for supervisory liability as to Haviland. Haviland ordered and then oversaw the internal investigation of Campos because he realized that Campos provided conflicting testimony. *See Jankowski*, 649 F. App'x at 187. Further, Haviland personally participated in the investigation. Next, the allegations regarding Haviland's instructions to destroy notes are also sufficient to plead a claim for supervisory liability because Haviland "knew or should reasonably have known" that these instructions "would cause others to deprive the plaintiff of [his]constitutional rights." *Santiago*, 629 F.3d at 130.

As for the supervisory liability claims against LoIacono and Padilla, the Court dismissed these claims in the FAC because Plaintiff failed to plead sufficient facts demonstrating that LoIacono and Padilla condoned or instructed their subordinates to act in a manner that violated Plaintiff's civil rights. Oct. 19 Opinion at 44-45. In the SAC, Plaintiff pleads that LoIacono knew that Al-Ayoubi illegally ingested steroids but failed to supervise by ensuring that Al-Ayoubi was

---

[11] The Third Circuit has "refrained from answering the question of whether *Iqbal* eliminated—or at least narrowed the scope of—supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us." *Jankowski*, 649 F. App'x at 187 (quoting *Argueta*, 643 F.3d at 70).

terminated per the Drug Policy Guidelines.  SAC ¶¶ 101-08, 112, 463.  These allegations are sufficient to establish knowledge and participation in the alleged wrongdoing that is necessary to plead a supervisory liability claim under § 1983.  The SAC, however, does not plead that Padilla knew of Al-Ayoubi's steroid use or the dismissal of Al-Ayoubi's administrative charges.  Accordingly, as pled, Plaintiff does not sufficiently allege that Padilla condoned or instructed any subordinates in a manner that violated Zisa's civil rights.  Thus, Plaintiff fails to plead a supervisory liability claim as to Padilla.

Finally, Plaintiff also asserts his supervisory liability claims against Hackensack.  As discussed, [a] municipality may be liable under Section 1983 "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury."  *Jewell*, 497 F. App'x at 185 (quoting *Monell*, 436 U.S. at 694).  But Plaintiff fails to plead deliberate indifference.  As a result, Plaintiff's supervisory liability claims fail as to Hackensack.[12]

### 3.  Malicious Prosecution (Counts Three – Five)

In Counts Three through Five of the SAC, Zisa asserts malicious prosecution and conspiracy to commit malicious prosecution claims as to all charges except the 2008 Official Misconduct charge against Haviland, Campos, Al-Ayoubi, Herrmann, Padilla, LoIacono and Ferraioli.  SAC ¶¶ 399-448.  Campos, Ferraioli, and Haviland seek to dismiss these claims pursuant to Rule 12(b)(6).  Campos Br. at 11-14; BCPO Def. Br. at 19-27.

To state a *prima facie* malicious prosecution claim under § 1983, the NJCRA, and the common law, a plaintiff must plead that (1) defendants initiated a criminal proceeding; (2) the

---

[12] In the SAC, Plaintiff also asserts his claims for denial of a fair trial, malicious prosecution, fabrication of evidence and conspiracy against Hackensack.  Because Plaintiff does not plead that Hackensack was acting pursuant to an official policy or custom, these claims are all dismissed as to Hackensack.

criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)) (setting forth elements for a Section 1983 malicious prosecution claim); *Waselik v. Township of Sparta*, No. 16-4969, 2017 WL 2213148, at *8 n.15 (D.N.J. May 18, 2017) (stating that a malicious prosecution claim under the NJCRA is construed in parallel to a § 1983 claim); *Frost v. County of Monmouth*, No. 17-4395, 2018 WL 1469055, at *9 (D.N.J. Mar. 26, 2018) (setting forth elements of common law malicious prosecution claim). Section 1983 claims also require a plaintiff to establish that "he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler*, 564 F.3d at 186.

Ferraioli contends that the malicious prosecution claims must be dismissed as to him because Plaintiff fails to allege that he was personally involved in the wrongdoing. Campos Br. at 12. The Court agrees. Plaintiff pleads that Ferraioli and others intentionally presented false testimony, which facilitated the unfair trial. SAC ¶¶ 405-406. Outside of this conclusory allegation, Plaintiff fails to identify any false testimony from Ferraioli or even provide specific allegations of his involvement in the Zisa prosecution more generally. Without sufficient allegations demonstrating Ferraioli's personal involvement, the malicious prosecution claims asserted against him fail. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (affirming dismissal of First Amendment retaliation claim where plaintiff failed to allege personal direction of or knowledge and acquiescence in retaliatory actions by individual defendants); *Livingston v. Borough of Edgewood*, 430 F. App'x 172, 178 (3d Cir. 2011) (affirming dismissal of conspiracy claims because plaintiff "proffered neither direct nor circumstantial evidence

sufficient to a reasonable finding of conspiratorial agreement or concerted efforts among the defendants") (internal brackets omitted).

Similarly, Campos argues that malicious prosecution claims must be dismissed as to her, as they pertain to the 2008 Car Accident, because "Plaintiff has failed to allege a single fact that would tie Campos to the 2008 Car Accident or the subsequent investigation thereof." Campos Br. at 14. Again, the Court agrees. Zisa only alleges that Campos was involved in the 2004 Altercation and resulting investigation. Thus, Campos and Ferraioli's motion to dismiss is granted on these grounds.

Turning to Haviland, Haviland first argues that the malicious prosecution claims must be dismissed as to him because Plaintiff fails to allege that he personally initiated any criminal proceedings. BCPO Br. at 19. Although Haviland did not personally sign the two criminal complaints, Plaintiff alleges that Haviland participated in the Zisa investigation, which ultimately led to the criminal complaint and indictment. Indeed, Haviland was the lead investigator for the Zisa investigation. SAC ¶ 20. These facts are sufficient to establish at the motion to dismiss stage that Haviland was personally involved in the decision to initiate criminal proceedings as to Zisa. *See Peterson v. Bernardi*, 719 F. Supp. 2d 419, 431 n.12 (D.N.J. June 15, 2010) (explaining that "there must be a showing that the misconduct significantly contributed to the decision to prosecute").

Next, Haviland contends that the malicious prosecution claims are pled too broadly in light of the Court's earlier decision. In the October 19 Opinion, the Court explained that the official misconduct charges as to the 2008 Car Accident were not terminated favorably because they were ultimately dismissed after the remand on double jeopardy and fundamental fairness grounds. Accordingly, this Court dismissed the malicious prosecution claims, with prejudice, to the extent

that they relied on the official misconduct charges as to the 2008 Car Accident. Oct. 19 Opinion at 49-50. Yet, in its earlier Opinion, the Court permitted Plaintiff leave to replead as to other charges related to the 2008 Car Accident, specifically, the witness tampering and insurance fraud charges. *Id.* at 50. In the SAC, Plaintiff clarifies that his malicious prosecution claims are premised on charges that pertain to the 2004 Altercation, the insurance fraud charges for the 2008 Car Accident, SAC ¶ 407, the pattern of official misconduct charge, and the intimidating a witness charge, *id.* ¶ 408. These allegations appear to be in accord with Court's prior ruling. The SAC, however, fails to sufficiently differentiate the alleged wrongful conduct as to the 2008 Car Accident. In other words, as pled, the insurance fraud and witness tampering charges are not adequately distinguished from the official misconduct charges. Accordingly, because this Court already determined that the charge for official misconduct relating to the 2008 Car Accident was not favorably terminated, Plaintiff's malicious prosecution claim as a whole fails with respect to the 2008 Car Accident claims.[13] Haviland's motion to dismiss is granted on these grounds.

#### 4. Denial of Fair Trial (Counts One & Two)

In Counts One and Two, Plaintiff alleges that Defendants offered false testimony, used immunity agreements to solicit and offer perjured testimony, destroyed exculpatory evidence, and presented false and fabricated evidence to the grand jury and at trial with respect to the 2008 Accident charges. SAC ¶¶ 371-98. To plead a claim for an unfair trial, a plaintiff must allege "that the government's alleged pretrial misconduct resulted in an unfair trial." *Anderson v. Venango County*, 458 F. App'x 161, 164 (3d Cir. 2012). Moreover, "a violation of the procedures protecting the Sixth Amendment right to a fair trial, without an accompanying violation of the

---

[13] As a result, the Court does not reach Haviland's argument that he is entitled to qualified immunity with respect the Insurance Fraud Charge. BCPO Def. Br. at 24-27.

right to a fair trial itself, is not enough to state a § 1983 claim." *Id.* For example, in *Anderson*, the Third Circuit determined that the plaintiff could not state a § 1983 fair trial claim because the plaintiff was not retried following the alleged misconduct of witness tampering. *Id.* at 162-63; *see also Morgan v. Gertz*, 166 F.3d 1307, 1308 (10th Cir. 1999) ("The only judgment the court entered was a judgment of acquittal. Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial.").

Haviland contends that the fair trial counts must be dismissed because Plaintiff fails to identify any relevant non-immune misconduct. BCPO Br. at 18. As discussed, there are two non-immune activities for which Haviland could be subject to liability. First, is Haviland's involvement in the internal affairs investigation as to Campos, which pertains to the 2004 Altercation. Consequently, Counts One and Two cannot be premised on this conduct because Plaintiff ultimately prevailed on these charges. Oct. 19 Opinion at 56. Second, is Haviland's destruction of notes, which is not limited to the 2004 Altercation. Plaintiff alleges that the destroyed evidence inhibited Zisa's right to confront and cross-examine witnesses. SAC ¶¶ 306-08. Therefore, Plaintiff states a denial of fair trial claim as to Haviland based on conduct that is not subject to prosecutorial or qualified immunity.

Campos and Ferraioli argue that the fair trial claims should be dismissed as to them because Plaintiff fails to point to any statements or actions from either Defendant that relate to the 2008 Accident that contributed to the allegedly unfair trial. Campos Br. at 6. As discussed above, Campos's false testimony involved the 2004 altercation. Despite the fact that Plaintiff's denial of fair trials claims are limited to the 2008 Car Accident, Plaintiff alleges that he was denied a fair trial because the "jury also heard Campos's testimony on the 2004 Altercation and thereby she prejudiced Zisa." SAC ¶ 378. Campos's trial testimony is subject to absolute immunity. Oct. 19

Opinion at 27-28. Moreover, the Court already concluded, and reiterated above, that "Plaintiff's fair trial claims are dismissed to the extent that they rely on the 2004 Altercation." *Id.* at 56. Accordingly, Plaintiff cannot rely on Campos's trial testimony to support his fair trial claims, and these Counts are dismissed as to Campos.

The fair trial claims are also dismissed as to Ferraioli because outside of conclusory allegations, Plaintiff fails to attribute any actual wrongdoing by Ferraioli that caused Plaintiff to receive an unfair trial with respect to the 2008 Car Accident. *See Rode*, 845 F.2d at 1207-08.

### 5. Fabrication of Evidence (Counts Eight & Nine)

In Counts Eight and Nine, Plaintiff alleges that Defendants fabricated evidence in violation of Plaintiff's Fourteenth Amendment rights. SAC ¶¶ 491-510. A claim for fabrication of evidence can constitute a stand-alone § 1983 claim based on the Fourteenth Amendment's Due Process Clause.[14] *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014). To plead a claim for fabrication of evidence, a plaintiff must demonstrate that there was a "reasonable likelihood that, without the use of that [fabricated] evidence, the defendant would not have been convicted." *Id.*; *see also Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016) (stating that the evidence must be "so significant that it could have affected the outcome of the criminal case"). However, testimony that is incorrect or disputed cannot necessarily support a claim for fabrication of evidence. Rather, there must be "persuasive evidence supporting a conclusion that the proponents of the evidence were aware that the identification was incorrect, and thus, in effect, offered the evidence in bad faith." *Halsey*, 750 F.3d at 295.

---

[14] Alleged fabrication of evidence can also be used in conjunction with a § 1983 claim for malicious prosecution in violation of the Fourth Amendment. *Halsey v. Pfeiffer*, 750 F.3d 273, 290-91 (3d Cir. 2014).

Ferraioli seeks to dismiss the fabrication of evidence claims as to him because the SAC does not plead any facts alleging that he fabricated evidence. Campos Br. at 14-16. While the SAC pleads that Ferraioli's attorney, in essence, set the entire Zisa prosecution into action, SAC ¶ 49, the SAC does not allege that the Zisa prosecution was in any way based on statements or testimony from Ferraioli. Without an allegation that Ferraioli provided or assisted in manufacturing false testimony, the false testimony claims fail as to him. *See Rode*, 845 F.2d at 1207-08.

Campos argues that the false testimony claims must be dismissed as to her because Plaintiff fails to point to any evidence from her that is connected to the 2008 Accident conviction. Even if an individual is acquitted, he may still bring a fabrication of evidence claim if "there is a reasonable likelihood that, absent the fabricated evidence, the defendant would not have been criminally charged." *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016). Accordingly, Campos's motion to dismiss is denied on these grounds.

Turning to the allegations as they pertain to Haviland, Haviland argues that because the claim only involves the 2004 Altercation, Plaintiff's claims are barred by the statute of limitations.[15] BCPO Def. Br. at 28-29. The statute of limitations is an affirmative defense not normally decided on a motion to dismiss. *See Crump v. Passaic County*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015). However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *Id*. "Section 1983 has no

---

[15] Zisa argues that the BCPO Defendants are barred from asserting this statute of limitations argument pursuant to Fed. R. Civ. P. 12(g)(2). Plf. Opp. at 60. Rule 12(g)(2) generally prohibits a party from asserting a new argument or defense in a Rule 12(b)(6) motion to dismiss that was not, but could have been, raised in an earlier filed Rule 12(b)(6) motion to dismiss. Fed. R. Civ. P. 12(g)(2). The BCPO Defendants, however, raised the statute of limitations argument in their first motion to dismiss. *See* D.E. 40-1 at 11.

statute of limitations of its own, but borrows the statute of limitations from state personal injury torts." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018). In New Jersey, personal injury torts have a two-year statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). This same limitation period also applies to Plaintiff's claims under the NJCRA. *Caban v. City of Newark*, No. 17-8230, 2018 WL 2427124, at *4 (D.N.J. May 30, 2018)). Federal law, however, governs the date when a Section 1983 claim accrues and the statute of limitations begins to run.[16] *Nguyen*, 906 F.3d at 273.

"A claim accrues when the last act needed to complete the tort occurs." *Id.* To that end, the Supreme Court recently clarified that like a claim for malicious prosecution, a plaintiff cannot bring "fabricated-evidence claims under § 1983 prior to favorable termination of his prosecution." *McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (concluding that the *Heck* bar applies to § 1983 claims for fabrication of evidence). Thus, for the same reasons as discussed in the October 19 Opinion, Plaintiff's malicious prosecution claims did not accrue until July 24, 2017. Oct. 19 Opinion at 48-49. Plaintiff's fair trial claims, therefore, are not time-barred.

Haviland also contends that Zisa fails to plead specific facts as to Haviland's involvement in the purportedly fabricated evidence. BCPO Def. Br. at 28. Drawing all reasonable inferences in Plaintiff's favor, the SAC pleads sufficient facts as to Haviland's personal involvement in the alleged fabrication of evidence. Specifically, the SAC pleads that Haviland ordered and then oversaw the Campos internal affairs investigation because he realized that Campos provided conflicting testimony, and fabricated evidence through this Internal Affairs investigation. SAC ¶¶ 178-95. Consequently, the BCPO's motion to dismiss is denied to the extent that it seeks to dismiss

---

[16] While not specifically addressed by either party, Zisa's NJCRA claims also accrued when the wrongful act or omission occurred. *Evans v. City of Newark*, No. 14-120, 2016 WL 2742862, at *4 (D.N.J. May 10, 2016).

the fabrication of evidence claims asserted against Haviland based on conduct that is not protected by sovereign or qualified immunity.

### 6. Conspiracy (Counts Twelve and Thirteen) and Aiding and Abetting (Count Sixteen)

Campos, Ferraioli, Haviland and Al-Ayoubi seek to dismiss Plaintiff's conspiracy and aiding and abetting claims as time-barred. The conspiracy and common-law tort claims that Plaintiff asserted in the FAC were dismissed as time-barred because they accrued when his trial was complete in 2012. Oct. 19 Opinion at 59-60. In the SAC, Plaintiff's conspiracy and aiding and abetting claims are still premised on the same pre-trial conduct. SAC ¶¶ 511-24; 63-70. Accordingly, Counts Twelve, Thirteen and Sixteen are dismissed with prejudice because they are barred by the statute of limitations.[17]

## IV.    CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (D.E. 137-41) are **GRANTED** in part and **DENIED** in part. An appropriate Order accompanies this Opinion.

Dated: March 31, 2020

John Michael Vazquez, U.S.D.J.

---

[17] Arosemowicz seeks to dismiss the conspiracy and aiding and abetting counts on the merits. *See* D.E. 137. Because the Court is dismissing these counts on statute of limitations grounds it does not reach the merits of these claims.